447 A.2d 983

COMMONWEALTH of Pennsylvania

v.

**Richard HOFFMAN, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Joel SCHMIDT, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 1980.

Filed July 2, 1982.

Petition for Allowance of Appeal Denied Oct. 1, 1982.

314

John F. Meehan, Assistant Public Defender, Doylestown, for appellants.

Michael Kane, District Attorney, Doylestown, for Commonwealth, appellee.

Before CAVANAUGH, MONTEMURO and POPOVICH, JJ.

MONTEMURO, Judge:

After a jury trial, appellants, Hoffman and Schmidt, were found guilty of simple assault.[1]  Post-trial motions were denied, and they were sentenced to one (1) year probation and ordered to pay a fine of $250.00 and costs.

Appellants contend that the trial judge erred in not granting their motion for a mistrial after several prejudicial questions posed by the prosecutor on cross-examination.  In order to understand the statements in the context of the proceedings, a summary of the facts is necessary.

On November 27, 1978, appellants were both members of the Morrisville Borough Police Department however on that day they were off duty and were engaged as deputy sheriffs for Bucks County to be stationed at the site of a strike at

[1]  18 Pa.C.S.A. 2701.

the United States Steel plant in Fairless Hills. They were to be picked up at approximately 8:00 a. m. at the Morrisville Borough Police Headquarters. As they were waiting for their ride at the station, John Horlowski was being escorted from the Morrisville Borough Police Department lockup to the Bucks County Prison. He had been arrested earlier that morning in Morrisville and had been unable to post bail. It was the contention of the Commonwealth that as Horlowski was being escorted from the borough hall in handcuffs by a constable, he was beaten by the appellants. Hoffman allegedly punched Horlowski in the stomach and then Schmidt kneed him twice in the head. At trial, the Commonwealth introduced the testimony of Horlowski and the constable and various other witnesses who testified concerning admissions by appellants after the episode. Appellants admitted their presence at the scene but denied striking Horlowski.

During the cross examination of appellant Hoffman, the District Attorney asked, "Sir, isn't it a fact that you and Officer Schmidt were very proud of the fact that the kids in Morrisville were very afraid of you?" Defense counsel's objection was sustained, a motion for mistrial was denied, and a cautionary instruction given.

The District Attorney later questioned, "as a police officer, during the time when you were a police officer, wasn't it your practice to brag generally about how tough you were and how the kids were so afraid of you?" Defense counsel's objection was sustained but his motion for mistrial was denied with no cautionary instruction.

Appellant Schmidt testified on direct that he had a brown belt in karate and taught martial arts to young people in the community. He testified that he could not have struck Horlowski as alleged because if he had, Horlowski would have sustained serious injuries. The District Attorney asked Schmidt on cross, "Mr. Schmidt, you've told us that you've had ... physical contact with your students. Is there a cemetery somewhere full of your karate students?" Defense counsel's objection was sustained but his motion for mistrial was denied without any cautionary instruction.

The District Attorney later asked Schmidt, "As a result of your arrest on January 12 of this year 1978–79, you've been suspended, dismissed from the Morrisville Borough Police Department, haven't you?" Defense counsel's objection was sustained but his motion for mistrial was denied, with the following cautionary instruction: "I will say to the jury whether or not you have been suspended is immaterial. It is not to be considered by you in any respect."

A motion for a mistrial rests within the sound discretion of the court and an abuse of that discretion will not readily be found when prompt curative actions are taken by the trial court. *Commonwealth v. Tribblett,* 242 Pa.Super. 164, 363 A.2d 1212 (1976). "But even when the language of the district attorney is intemperate, uncalled for, or improper, a new trial is not necessarily required." *Commonwealth v. Stoltzfus,* 462 Pa. 43, 61, 337 A.2d 873, 882 (1975). To warrant the granting of a motion for a mistrial, "[t]he language must be such that the unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict. . . . [t]he effect of such remarks depends on the atmosphere of the trial." *Id.,* 462 Pa. at 61, 337 A.2d at 882.

Viewing the above question by the District Attorney, by these standards, we conclude that the trial judge did not err in denying the motion for a mistrial. The first two questions were relevant to show notions, intent, or frame of mind. As such they were clearly admissible.[2] See *Commonwealth v. Glover,* 446 Pa. 492, 286 A.2d 349 (1972). The third question, dealing with appellant Schmidt's lethal karate prowess was also relevant and proper and merely highlighted the obvious flaw in his defense. Schmidt stated on direct that he could not have struck Horlowski without fracturing Horlowski's nose or skull. Since Schmidt testified that he

2. We note that counsel's objections were sustained as to all three questions. This does not mean that none of the questions were relevant or admissible. The trial judge in controlling the examination of witnesses, may limit questioning for any number of reasons.

taught karate and did make contact with his students, the inference is that he must have seriously injured every student he touched. The question was therefore probative.

■ The last question pertaining to Schmidt's dismissal from the police force was clearly improper. However, because of the prompt objection, the sustaining of the objection, and the curative instruction, we hold that the court was correct in denying the motion for the mistrial, see *Commonwealth v. Tribblett, supra.* The unanswered question was not of a type that would unavoidably prejudice a jury considering the atmosphere of the trial. *Commonwealth v. Stoltzfus, supra, contra Commonwealth v. Perillo,* 474 Pa. 63, 376 A.2d 635 (1977).

Appellants next contend that the trial court erred in not permitting defense counsel to have access to and cross-examination of John Horlowski and another Commonwealth witness, Dale Metrocavige, concerning their juvenile records. It should first be noted that John Horlowski apparently had no juvenile adjudications. The lower court in its opinion stated: "The record fails to reveal that Horlowski had any prior adjudications whatsoever in either Pennsylvania or New Jersey. At a conference on this matter, the District Attorney represented that she was aware of no such adjudications in any jurisdiction. Defense counsel asserted that he had heard that there were such adjudications but offered no further elaboration. Therefore, there was no basis upon which to determine that any prior adjudications on Horlowski would be admitted." Slip Opinion at 5.

■ We agree that, in the absence of any proof in the record that Horlowski in fact did have a juvenile record, there is no basis upon which to make a ruling. The action of the lower court was therefore correct.

However, Dale Metrocavige did have an extensive juvenile record with several adjudications of delinquency. The trial judge ruled that his juvenile record could not be admitted to impair his credibility, noting that the adjudications were not offered by the defense to show bias.

In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the United States Supreme Court held that the protection of the Confrontation Clause enabled a defendant in a criminal trial to cross-examine a prosecution witness on possible bias with the witnesses' juvenile record even though such an impeachment conflicted with a State's asserted interest in preserving the confidentiality of juvenile adjudications of delinquency. In that case, the witness' testimony was crucial to the prosecution, and at that time, he was on probation from a juvenile adjudication. The court limited its holding to instances in which a defendant wished to show bias through cross-examination.

In *Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978), the Pennsylvania Supreme Court, cognizant of the holding in *Davis v. Alaska*, supra, held that defense counsel was entitled to access to a prosecution witness' juvenile record even though the offer of proof was a general one to impeach the witness' credibility. The court reasoned that counsel could not frame an offer of proof to impeach on bias without first examining the juvenile record. The prosecution witness in that case was crucial to the Commonwealth's case. The court remanded the case to allow defense counsel to examine the juvenile record.

In the case before us, the trial judge denied defense counsel *access* to Dale Metrocavige's juvenile record. Therefore, defense counsel was precluded from establishing an argument based on possible bias. However, there are factual distinctions in this case sufficient to render any error harmless. Dale Metrocavige was not a crucial prosecution witness. He was not an eyewitness, and his testimony centered around a scenario in which he was actually in custody and participated in a conversation with Hoffman and Schmidt. He was also impeached by an offer of proof of a prior conviction in adult court for the crime of conspiracy to commit a burglary. There were numerous witnesses at the scene and at trial. Any further impeachment of Dale Metrocavige's testimony could not reasonably have affected the verdict. We therefore hold that the exclusion of this

evidence was harmless. See *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

For the foregoing reasons, Judgments of Sentence are affirmed.[3]

CAVANAUGH, J., concurs in the result.

---

3. Appellants raise several other allegations of error. After a thorough examination of the record, we conclude that they are without merit.